CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 17 2010

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT PHAROAH HOWARD, | ) |
| Plaintiff, | ) Case No. 7:10CV00052 |
| v. | ) |
| | ) MEMORANDUM OPINION |
| TRACY S. RAY, ET AL., | ) By: Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendants. | ) |

Plaintiff Robert Pharoah Howard, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Howard alleges that prison officials at Red Onion State Prison used excessive force against him, in violation of his constitutional rights.[1] The defendants filed a motion for summary judgment, and Howard responded, making the matter ripe for disposition. Upon review of the record, the court concludes that the motion for summary judgment must be granted in part and denied in part.

## I. Background

### A. Plaintiff's Allegations

Howard alleges the following sequence of events on which he bases his claims. On July 18, 2009, at approximately 7:15 a.m., Correctional Officers T. Large and J. Gibson of Red Onion, were escorting Howard from A2 Pod to the recreation yard. Howard was in handcuffs

---

[1] When Howard filed his initial complaint, the court offered him an opportunity to particularize his allegations. He did so by filing an amended complaint with many attachments in support.

and shackles. The officers became "very hostile," cursing Howard with "racial remarks." Large pulled Howard's burgundy scrub shirt over his entire face and placed his hand on the left side of Howard's face. Then, the officer performed a military take down procedure by stepping between Howard's legs onto the shackles and then sweeping Howard's legs out from under him to slam him to the ground. Howard's head "bounced off the ground 5 times really hard." While Howard was on the ground, Large "tried breaking" three fingers on the inmate's right hand. Gibson, a large man, landed with his full weight on top of Howard's left knee. Gibson allegedly told Howard that the officers threw him to the ground for "running his mouth." Howard asserts that he was only "speaking up for [his] rights." He alleges that another officer informed him that Gibson and Large assaulted Howard, because he had previously refused their request to throw bodily waste on prisoners who "were messing up their program."

Howard claims that he suffers migraine headaches as a result of his head hitting the ground during the takedown on July 18, 2009. He also claims that his knee swelled up so badly that medical staff allowed him "no kneel" passes for months after the incident.[2] Several months later, he was diagnosed with a "benign ligament tumor in [his] left knee."

Howard claims that Large and Gibson used excessive force against him on July 18, 2009. He also asserts that Virginia Department of Corrections (VDOC) Director Gene M. Johnson and

---

[2] Medical records attached to Howard's amended complaint trace the course of medical treatment Howard sought and received after the July 18, 2009 incident. The nurse who examined Howard immediately after the incident noted that the inmate was complaining of knee pain, but the nurse did not observe any edema in the knee area at that time. The nurse provided Howard with pain medication. In the following weeks, Howard continued to complain about knee pain. On July 23, 2009, the knee was still tender to touch and was slightly bruised. The nurse instructed Howard not to exercise if the knee was still hurting and provided him with pain medication. X-rays of Howard's left knee on August 10, 2009 were normal. Results of an MRI of Howard's knee, performed on September 16, 2009, indicated a large soft tissue mass near the kneecap.

Red Onion Warden Tracy Ray, as supervisors to Large and Gibson, are also liable for the injuries caused by their subordinates' unconstitutional actions.

**B. Defendants' Evidence**

Defendants Large and Gibson offer affidavits in support of their motion for summary judgment, in which they present a different description of the events of July 18, 2009. Large states:

> [A]s we were escorting Howard through the pod vestibule area, he became disruptive and stated, "I'll spit on one of you bitches." I told Howard that if he did not calm down, he would be returned to his cell. Howard then started to pull in the direction away from the recreation door. At the same time, Howard turned his head toward me while making a hacking sound as if he was going to spit on me.

(DE 25, Large Affid. 2.) Large states that from these actions, he believed Howard was going to spit on him and that he took Howard to the ground in order to prevent what he perceived as a threat toward his person and to gain control of the situation. Large denies cursing or using racial slurs toward Howard on July 18, 2009, and denies trying to break any of Howard's fingers or trying to smother him with his shirt.

Gibson offers a similar description of Howard's actions on July 18, 2009. He states that after Large said Howard would be returned to his cell if he did not calm down, Howard pulled away from Gibson, toward Large, and started "hacking up spit."[3] (DE 25, Gibson Affid. 2.) The officers state that they used only the amount of force necessary to gain control of the situation and intended only to place Howard on the ground until he stopped his disruptive behavior. Gibson denies cursing or using racial slurs toward Howard.

---

[3] The record does not indicate that Large or Gibson pursued a disciplinary charge against Howard for the behavior he exhibited on July 18, 2009 before the take down.

- 3 -

Defendant Ray states that Officer Large received a written notice, placed in his personnel file, because the "leg sweep" he used to take Howard to the ground on July 18, 2009 is not authorized by the VDOC. Ray explains that because this maneuver is not taught to VDOC employees, it is not authorized for use against prisoners. Ray also submits a log book entry from July 19, 2009, noting that at 7:50 a.m., an officer conducting a security check in Howard's unit heard a banging noise from Howard's cell and observed Howard "hitting the bottom of his cell table with his left knee."[4] (DE 25, Ray Affid. 2.) When security officers informed the nurse of this behavior, she went to speak with Howard, but he refused medical assessment.

## II. Discussion

### A. Standard of Review

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A verified complaint filed by a pro se prisoner, stating factual allegations based on personal knowledge, is to be considered as the equivalent of an affidavit and may defeat a motion

---

[4] The log book entry about this incident appears to be written and signed by Officer Large. Howard denies that he would ever inflict injuries on himself in order to frame officers, "no matter how much [he] dislike[s] them."

for summary judgment. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). Although the court must view genuinely disputed facts in the light most favorable to the nonmovant, the court "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (omitting quotation).

**B. Excessive Force**

It is well established that "[a]fter incarceration, only the unnecessary and wanton infliction of pain on prisoners constitutes cruel and unusual punishment" in violation of the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotations omitted). On the other hand, not every malevolent touch by a prison guard amounts to deprivation of constitutional rights. Hudson v. McMillian, 503 U.S. 1, 9 (1993).

> For an inmate to prove an excessive force claim, he must satisfy not only the subjective component that the correctional officers acted with a sufficiently culpable state of mind, but also the objective component that his alleged injury was sufficiently serious in relation to the need for force to establish constitutionally excessive force.

Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998). Plaintiff must prove that, subjectively, the force was applied "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." Id. (quoting Whitley, 475 U.S. at 320-21). This determination considers these factors: the amount of force used as related to the need for force, the threat reasonably perceived by the officers, and any attempts the officers made to "temper the severity of a forceful response." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "When prison officials maliciously and sadistically use force to cause harm,

contemporary standards of decency always are violated. . . . This is true whether or not significant injury is evident." Hudson, 503 U.S. at 9.

To prove the second component of his excessive force claim, the inmate "must show that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley, 134 F.3d at 634 (quoting Hudson, 503 U.S. at 8). This part of the analysis "evaluates the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose." Id. In short, the "core judicial inquiry [is] . . . the nature of the force—specifically, whether it was nontrivial and was applied . . . maliciously and sadistically to cause harm." Wilkins v. Gaddy, ___U.S.___, 130 S. Ct. 1175, 1179 (2010). The extent of the injury the inmate suffered is relevant to both of these determinations: as a factor in determining "whether use of force could plausibly have been thought necessary in a particular situation" and as "some indication of the amount of force applied." Id. at 1178.

### C. Defendants Large and Gibson

The court concludes that the evidence now in the record, taken in the light most favorable to Howard as the nonmovant, presents genuine issues of material fact in dispute so as to preclude summary judgment. Such disputes of fact concerning relevant events on July 18, 2009 include: the motives that caused the officers to place Howard on the ground as they did, Howard's conduct in the moments before the take down, and the extent of the injury caused by the take down. It is undisputed that these defendants used some force against Howard on July 18, 2009 and that he suffered some injury as a result. He alleges specific facts from which, if proven, a reasonable fact finder could find that his actions that day did not warrant any use of force and

that the officers' maliciously and sadistically used force against him in order to punish him for past conduct and verbal comments—Large, by implementing the "sweep" to take him to the floor, and Gibson, by placing his body weight on Howard's left knee. If such facts are found regarding the officers' culpable state of mind, even Howard's minor injuries immediately apparent after the incident could be found sufficiently harmful enough to support an Eighth Amendment claim of excessive force. See Wilkins, 130 S. Ct. at 1179 (finding that plaintiff must show force used "was nontrivial and was applied . . . maliciously and sadistically to cause harm"); Hudson. 503 U.S. at 9. Based on the foregoing, the court will deny the motion for summary judgment as to Howard's claims that Defendants Large and Gibson used excessive force against him on July 18, 2009 in violation of the Eighth Amendment.

**D. Defendants Johnson and Ray**

Howard admits that these defendants took no part in the July 18, 2009 incident. He asserts, however, that as prison administrators, they are responsible for the actions of their subordinates. He is mistaken.

Section 1983 requires a showing of personal fault on the part of a defendant, either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs; the doctrine of respondeat superior does not apply in § 1983 cases. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982). Thus, to prove that a supervisory official is liable under § 1983 for unconstitutional acts of his subordinates, plaintiff must demonstrate that (1) the conduct by subordinate employees which directly caused the deprivation was undertaken to effectuate an official policy or custom for which the official was responsible, id., or (2) the supervisory official was aware of a pervasive,

unreasonable risk of harm to plaintiff from a specified source and his failure to take corrective action himself, out of his own deliberate indifference or his tacit authorization of inaction by subordinates, was a causative factor in the constitutional injuries inflicted by others. Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

Howard offers no evidence that Large and Gibson acted as they did, pursuant to a VDOC policy for which Johnson or Ray is responsible. Moreover, it is undisputed that Large used a technique not approved for use by VDOC officers. Howard also offers no evidence that Johnson or Ray was personally aware that Large and Gibson posed an unreasonable risk of harm to inmates in general or to Howard in particular.[5] Id. As Howard fails to demonstrate any facts on which he could prove supervisory liability on the part of Johnson or Ray, the court will grant summary judgment as to his claims against these defendants.

### III. Conclusion

For the stated reasons, the court concludes that the motion for summary judgment must be granted as to the claims against Defendants Johnson and Ray, but denied as to the claims of excessive force against Defendants Large and Gibson. An appropriate order will issue this day.

---

[5] Howard does assert that Defendants Johnson and Ray should never have allowed Large to work in a stressful environment like Red Onion, because Large had previously served in the military and may have developed post traumatic stress syndrome (PTSD). Other than this conclusory allegation, however, Howard offers no indication or evidence that Large, in fact, has been diagnosed with PTSD or that Johnson and Ray were aware of this diagnosis or any particular adverse implications it might have in the prison setting.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 17th day of September, 2010.

_____
Chief United States District Judge